1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4    UNITES STATES OF AMERICA          )
                                       )
5                                      )
     vs.                               )
6                                      )  No. 1:11-cr-10206-DPW
                                       )
7    ARCHIE ALLEN,                     )
                                       )
8                    Defendant.        )

9

10   BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK

11

12                       SENTENCING HEARING

13

14

15        John Joseph Moakley United States Courthouse
                       Courtroom No. 1
16                    One Courthouse Way
                      Boston, MA 02210
17                   Thursday, May 9, 2013
                         2:10 p.m.
18

19

20
             Brenda K. Hancock, RMR, CRR
21                Official Court Reporter
         John Joseph Moakley United States Courthouse
22                   One Courthouse Way
                     Boston, MA 02210
23                    (617)439-3214

24

25

1    APPEARANCES:

2

          US ATTORNEY'S OFFICE - MA
3         J. Joseph Moakley U.S. Courthouse
          1 Courthouse Way
4         Suite 9200
          Boston, MA 02210
5         On behalf of the United States of America.

6

          PAUL J. GARRITY, ESQ.
7         14 Londonderry Road
          Londonderry, NH 03053
8         On behalf of the Defendant.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following proceedings were held in open court

2     before the Honorable Douglas P. Woodlock, United States

3     District Judge, United States District Court, District of

4     Massachusetts, at the John J. Moakley United States Courthouse,

5     One Courthouse Way, Courtroom 1, Boston, Massachusetts, on

6     Thursday, May 9, 2013):

7          THE CLERK:  All rise.

8      (The Honorable Court entered the courtroom at 2:10 p.m.)

9          THE CLERK:  This is Criminal Action 11-10206, the

10    United States v. Archie Allen.

11         THE COURT:  Well, in addition to the Presentence

12    Report, I have the defendant's Sentencing Memorandum here, the

13    Pretrial Services Report from Mr. Cronin, and I have had three

14    letters passed up to me, one from Brent Henry, one from Edward

15    Allen, and one from Thomas Strodder (ph), I guess is how I

16    would pronounce that.

17         Are there any other written materials I should have?

18         MS. CUMMINGS:  No, your Honor.

19         MR. GARRITY:  No, your Honor.

20         THE COURT:  So, we have this outstanding issue with

21    respect to the calculation of the drug weight.

22         Does the Government have a view?

23         MS. CUMMINGS:  The Government agrees with the

24    positions set forth by Probation.

25         THE COURT:  I guess, Mr. Garrity, the issue is does

1  the defendant's own statement have to be corroborated?

2  MR. GARRITY:  Judge, I will start out by saying I

3  guess I'm asking to have -- I can see them asking to have my

4  cake and eat it too, to some extent, and I know the Application

5  Notes say that what someone says in proffer can be utilized,

6  although that is not part of the statutory scheme that has to

7  be complied with.  I guess my position is he was forthright, he

8  was truthful.  It just doesn't seem to make sense that on the

9  one hand you get the Safety Valve, on the other hand you get, I

10  guess whacked, for lack of another term, by your truthfulness.

11  THE COURT:  Well, people make calculations, I suppose,

12  about what is good for them and what is not.  The Safety Valve

13  opens things up a bit, but it also is evidence of what I might

14  broadly call "remorse," and so candor has an ancillary benefit

15  quite apart from the guidelines.  But I cannot imagine a system

16  in which I would disregard what the defendant said, nor would

17  I, at the defendant's instance, require corroboration of what

18  he said, and the consequence of it is a more mixed issue.  But,

19  as presented to me here, I am overruling that objection.

20  MR. GARRITY:  I understand, Judge.

21  THE COURT:  Is there anything else?  Because Probation

22  seems to have accepted your view otherwise here.

23  MR. GARRITY:  Not in terms of objections.

24  THE COURT:  Yes.

25  MR. GARRITY:  I do have some witnesses that would like

1    to address the Court, if they could, before I address the

2    sentencing argument.

3           THE COURT:  Witnesses in what sense?

4           MR. GARRITY:  Just to present to you maybe a fuller

5    picture of Mr. Allen.  His mother, his brother and his

6    girlfriend.

7           THE COURT:  Well, ordinarily, I take it by written

8    statement.  I will permit them to speak but after we have heard

9    from the Government's perspective and perhaps your choice

10   before or after what you have to say on the question of what

11   amounts to departure here by you.

12          But to restate the circumstances, I understand that

13   the defendant is eligible for a Safety Valve here.

14          MS. CUMMINGS:  Yes, your Honor.

15          THE COURT:  He has met all five conditions of the

16   Safety Valve.  And the consequence of that would be that he has

17   a guideline custodial range of 87 to 108 months, supervised

18   release of up to 5 years, a fine of $15,000 to $10 million and

19   a Special Assessment of $100.  So, those are the set of

20   numbers.

21          So, let me hear the Government on its recommendation.

22          MS. CUMMINGS:  Thank you, your Honor.  The Government

23   is recommending a term of incarceration of 72 months.  This

24   does represent about a 20-percent downward variance from the

25   guideline sentencing range.

1          Mr. Allen was charged with another individual in this

2    case, Owens Brown, who was sentenced by this court to 180

3    months.  Mr. Brown was Mr. Allen's source of supply.  The 180

4    months was picked from a range, a (C) plea that was submitted

5    to the Court, and the Government had agreed to cap its

6    recommendation at 188 months, which similarly represented a

7    20-percent downward variance from Mr. Brown's guideline range.

8    So, the Government's being consistent with sort of the

9    20-percent downward variance with Mr. Allen as well

10   as Mr. Brown.

11         But for other reasons, 72 months seems to make sense

12   in Mr. Allen's case.  On the one hand, he is responsible for

13   distributing a significant quantity of crack cocaine in the

14   Lenox Street area of Boston, 1.7 kilograms of crack over a

15   four-year period, which is what he pled guilty to in the

16   information.  It's a huge quantity.  It has a massive impact on

17   a portion of the Boston community that already is very

18   vulnerable, and Mr. Allen didn't help this in any sense of the

19   word.

20         That said, Mr. Allen also did come forward, did avail

21   himself of the safety-valve process, and, in the Government's

22   perspective, was very, very candid about his criminal activity

23   during the course of this conspiracy, even at his own peril at

24   some points in time.

25         In addition to that, the Government takes into account

1    the fact that Mr. Allen hasn't served a significant period of

2    incarceration, if any period of incarceration, so 72 months,

3    though a downward variance from the guidelines, is a

4    significant sentence for someone in Mr. Allen's position, and

5    the Government feels as though this sentence will deter Mr.

6    Allen from re-offending when he gets out, will also send a

7    message that, if you are going to be dealing in the quantities

8    of crack cocaine you're dealing with, you are going to be

9    getting a substantial sentence of incarceration, but it is not

10   more harsh than would be necessary to accomplish these goals,

11   your Honor.

12              THE COURT:  All right.  Thank you.

13              So, Mr. Garrity, rather than swear the individuals, I

14   think what I would prefer is that they speak from the podium.

15              MR. GARRITY:  That would be fine, Judge.

16              Judge, this is Eddie Allen.  This is Mr. Allen's

17   brother.

18              THE COURT:  Right.  And I have received a letter from

19   Mr. Allen here.  Is that right?

20              MR. EDDIE ALLEN:  Hi.

21              THE COURT:  You work for the Bank of New York as a

22   Corporation Operations Specialist?

23              MR. EDDIE ALLEN:  Yes.

24              THE COURT:  Go ahead.

25              MR. EDDIE ALLEN:  All right.  See, Archie, he's been

1    like a great help to me, because I'm diabetic, and I have

2    chronic seizures, and he has been like the one that's been

3    taking me back and forth to the hospital.  He also lives with

4    me and he helps me pay for my rent and also keep up with my

5    medication, because at times, when I have seizures, I forget,

6    and he's like an emergency contact to me.  All the other

7    dealers I didn't know about, but as far as him, he is a great

8    person.  He's been there for me.  Now that he's in trouble, I

9    don't know what I'm going to do, because I'm constantly going

10   back and forth to the hospital, and he is my emergency contact,

11   and, as far as I knew, is that he was a great person.  He

12   always stayed on top of me, stayed on top of the bills, you

13   know, making sure that I'm going back and forth to work, I'm

14   not forgetting none of my medications, and also he drives me

15   back and forth to work sometimes when I can't make it, pick me

16   up on my job.  When they see that I'm out of it, they usually

17   call him up.  There just ain't too much to say, because he's

18   been like my right hand that helped me with my medication and

19   my problems going back and forth to the hospital.

20          THE COURT:  All right.  Thank you, Mr. Allen.

21          MR. EDDIE ALLEN:  All right.  Thanks.

22          MR. GARRITY:  Your Honor, this is Mr. Allen's mother.

23          THE COURT:  All right.

24          MS. ALLEN:  Good evening.  I'm Archie's mother, and to

25   me Archie is a good person, and he's always there for his

1    family, his kids.  He raised his kids from the day they were

2    born.  He's always been there for them.  With him, since he got

3    his self in this trouble, he's been depressed.  He had always

4    been a happy-go-lucky person, but now he gets depressed, and he

5    don't do things like he used to do because of -- his nephews

6    and nieces, they all depend on him.  My daughter, when she had

7    problems with her son and stuff, she called him, and I got a

8    sister that's very sick, and she's always calling him, and he

9    always been there for me, but I am mostly concerned about him,

10   because I don't think that he can handle -- he ain't never been

11   away from home like this, and so I don't know as he can handle

12   this or not.  So, I just want you to know that he is a very

13   good person.  A lot of people like him.  Even his lawyer likes

14   him.

15           Thank you so much.

16           THE COURT:  Thank you, Ms. Allen.

17           MR. GARRITY:  Your Honor, his girlfriend, I guess,

18   can't speak at this point, but Mr. Allen wanted to address the

19   Court, if he could.

20           THE COURT:  Yes.  This is the opportunity to do that.

21           You can stay there, Mr. Allen.

22           THE DEFENDANT:  Well, first and foremost, I would like

23   to apologize to my mother and my kids that can't be here today.

24   You know, I know I'm not the perfect guy in the world.  You

25   know, we all make mistakes.  I didn't understand that the

1   mistake I was making would be costing me on missing out on my

2   niece, who is sick.  She could pass away any day because she

3   has a nerve disease.  I never thought I would miss out on that,

4   to be able to say goodbye to her for my last time.  My mother,

5   I worry about her, because she's an older lady, she's retired.

6   And my aunt, you know, she just got over cancer, throat cancer.

7   So, I don't know how long she's going to be here, if

8   everybody's going to be here by the time I get out.  My Uncle

9   Roger, I take him shopping every month, because he's on heavy

10  medication.  My brother, you know, I just worry about him, if

11  he's going to be intact when I get out, you know, because he

12  goes through seizures.  I had a friend that passed away, he had

13  a seizure at night, and life is a promise, as we all know, and

14  I just want to say sorry to the Commonwealth, because I just

15  didn't have the slightest idea what I was, you know -- I was

16  smoking weed for over 30 years most of my life, and I'm not

17  blaming the drug on it, but it probably had something to do

18  with the fact that I have been a single parent.  I have a

19  21-year-old son that I raised since he was in the first grade.

20  I am a single parent, and I raised him to graduate, go to

21  college, and have a basketball career.  At least I know I did

22  something right in life, you know.  And I have four other kids

23  that have always been there.  I have a wife that's right there

24  that's been behind me the whole time, and I just had no idea,

25  you know.  We all make mistakes, and some mistakes that we

1    can't take back.  I know, for my responsibility, I admit for

2    what I did, and I pray to God day, and this, I guess, it was an

3    eye opener that I guess I needed to realize the stuff that I

4    was doing was not right.  I just want to say sorry to everybody

5    that I hurt, and especially having embarrassed my mother.

6              THE COURT:  All right.  Thank you, Mr. Allen.

7              So, Mr. Garrity, is there something further you wanted

8    to --

9              MR. GARRITY:  Very briefly, Judge.

10             THE COURT:  Sure.

11             MR. GARRITY:  Aside from the argument put forward in

12   the Sentencing Memo, a couple of brief factors other than what

13   was addressed to you by his mother and brother and Archie

14   himself.  I'm not discounting the dealing he was involved in.

15   He was dealing a substantial amount.  He said as much during

16   the proffer.

17             But one factor that wasn't addressed either in the

18   proffer report written up by Detective Brown or in the PSR -- I

19   think it's accurate.  It's reflected in my notes.  Archie, even

20   though he was dealing these substantial amounts, was making

21   little to no money off of it.  My notes reflect $50 or $100 per

22   ounce.  So he wasn't making much, if anything, off of this.

23             He was, I think, different than most drug dealers that

24   come before this court.  He was working full time.  He's got a

25   lengthy history of full-time employment.  He's supporting his

1    family.  So, he is, I think, unique in that respect.  I think

2    the drug usage he was engaged in that he talked about did have

3    something to do with it.  It doesn't excuse what he did, but I

4    think it's a factor that should be taken into account, and I

5    think the volunteer work he has done, as addressed in those

6    letters, indicates what kind of person he is.  And since he was

7    arrested in this case, as the Pretrial Services Report

8    indicates, he has been fully compliant with the conditions.  He

9    should be, anyway, but he's been fully compliant.  He's gotten

10   himself off of the drugs.  He's tested negative every time.

11           So, I think a sentence, as we have asked for, of 60

12   months, given, especially that he's never been incarcerated

13   before, other than that brief period of time related to that

14   state offense, will be more than sufficient to address all of

15   the purposes of sentencing.  It is going to be more than

16   specific deterrence to him, it is a general deterrent to

17   others, and I think it protects the safety of the community.

18   And I think, given how Archie has conducted himself since his

19   arrest, I think there won't be a chance that he will be back

20   before this Court.

21           So, we are asking for the 60 months' recommendation of

22   drug treatment program while incarcerated, and I think two

23   years of supervised release would be more than sufficient,

24   given how he has conducted himself in the almost two years

25   since his arrest.

1          THE COURT:  All right.  Thank you.

2          Well, the bottom line here is I will adopt the

3     defendant's recommendation of 60 months of incarceration.  It

4     is a very substantial decrease.  The Government was prepared to

5     make a very substantial decrease as well.  It is more, but it

6     seems appropriate in this setting.  I feel obligated, I think I

7     am obligated, to explain why I reach a conclusion like this in

8     light of the general overarching considerations of Section

9     3553.

10         The first is the seriousness of the offense.  I do not

11    hold it against Mr. Brown that he referred to this as a

12    mistake, but that is an understatement.  This is an extended

13    period of drug dealing in the community, and it has a

14    profoundly unsettling effect for the people with whom you live.

15         And while I understand that this was not greatly

16    remunerative, you did not make a lot of money as a result of

17    it, it was a lot of drugs, and a lot of drugs injected into

18    your community is a lot of trouble for a lot of people.  As a

19    consequence, society treats it as a very serious offense and

20    imposes very heavy penalties, as you can see here.  Some of

21    these are mandatories that send you away for twice the amount

22    of time that I am imposing.  And I do think it would be a

23    matter of disrespect for the law to impose a lesser sentence.

24    I do that in light of your personal characteristics, which are

25    other factors that I have to take into consideration.

1          I credit all that you have said, all that your brother

2     said, all that your mother said.  I credit what I see in these

3     letters, that you are a good man trying to help the community

4     in various ways and particularly devoted to your family and

5     trying to support them.  That is what makes it so perplexing

6     that you got yourself involved with drugs because of what it

7     does to other people, because you seem to be an individual who

8     is concerned about other people, particularly your family.  But

9     these kind of community efforts are I think real and laudable.

10    But you will understand me when I say that you are not here

11    because of all the laudable things you did.  You are here

12    because of the crime you committed.

13         But in evaluating the sentence that I impose, I take

14    into consideration your character apart from this activity.

15    Then I look at the question of individual deterrence, will you

16    do this again?  I do not think so, but there lingers a concern

17    about that, and that concern is one of those factors that

18    justifies a sentence of incarceration but at the level that has

19    been requested, which is, during my initial review of the

20    materials, more accurately the Presentence Report, was where I

21    thought this case might be.

22         I then turn to general deterrence.  What does it say

23    to other people who might be in your position, who have

24    otherwise laudable lives, who are supporting their families,

25    doing things that are beneficial to the community but,

1    nevertheless, are dealing drugs at this quantity?  Well, too

2    low a sentence suggests that maybe it's worth taking a shot at

3    it, that the risk of detection is not so high that you can

4    trade it off against the potential for incarceration.  I do not

5    believe I can impose a sentence below five years here on that

6    basis.

7              I look at the question of prison, the effect of

8    prison.  I am a little unsettled by that in your case, because

9    you seem to have, apart from the drug issues of your own, a

10   certain grounding.  Nevertheless, I do think that the prison

11   system can provide you with support, both in terms of drug

12   rehabilitation, but also in developing some additional skills,

13   work skills that will help you out when you get out of prison.

14             The short of it is, I do not think that prison is

15   something that is going to be deleterious to you, and, in fact,

16   you strike me as a man who has got enough sense of himself to

17   be able to negotiate his way through the prison system

18   successfully and do the time in a fashion that is supportive of

19   developing additional things in your life.

20             The final issue, and the one that really is the most

21   challenging in this case, is the question of disparity.  People

22   who are convicted of drugs, this amount of drugs, in this court

23   and in courts generally around the country do more time.

24   Judges impose more time.  I thought a good deal about this from

25   that perspective, because I think, as I have said repeatedly,

1    the whole purpose of the *Sentencing Guidelines* was to try to

2    ensure that that was not a part of sentences, that is, that

3    there were different sentences being imposed on people with the

4    same background who conducted the same kind of criminal

5    initiatives.  That is a very hard thing to do, because, all

6    other things being equal, is saying something that never

7    occurs.  But you have to be concerned, or I have to be

8    concerned.  Society generally has to be concerned about the

9    prospect that somebody is going to be doing materially less

10   time or materially more time for the same offense because it

11   undermines the sense of fairness and equality in the criminal

12   justice system, and this sentencing, frankly, is one at the

13   very lowest end of where I think it can go, in light of that

14   consideration.

15        You recognize your responsibility, and that is a good

16   thing.  You are genuinely remorseful about what you have done

17   and the impact of what you done has on people that you care

18   deeply about, and that also is a good thing.  But you recognize

19   you are paying a cost for it, a cost that others may not be

20   paying for.

21        Nevertheless, there is a cost that society as a whole

22   must charge, and it is the one that I consider to be at the

23   lowest end of what society must charge, at least speaking

24   through me, and that is the period of five years or 60 months

25   in prison, and that is why I reach that conclusion.

1          Now, I then turn to the question of supervised

2     release, which will be three years.  I do not view supervised

3     release, you should not either, as three years of hassle.  It

4     is three years of support that you get from the Probation

5     Office.  The Probation Office is not interested in making life

6     difficult for you.  They are interested in providing ways to

7     get you back into society in a productive sort of way, maybe

8     more productive than you have been before, and we focus, or

9     they will, and I am thinking about it, on your own drug

10    problem, which is real, and you acknowledge it had an effect,

11    played a part in your choice to engage in this kind of crime.

12         So, in addition to doing as Mr. Garrity requested I do

13    in the Sentencing Memorandum, and that is to make a

14    recommendation to what is called the 500-Hour Program here in

15    prison, which has an effect also on your release date, but I am

16    less concerned about that than I am about you getting your

17    hands around the drug problem that lurks out there behind every

18    corner for you.  You have done fine while you were on pretrial

19    release.  But every day you wake up and you have to realize

20    that you have got a drug problem of some sort, and the drug

21    treatment programs have a way of telling you a little bit more

22    about people who have worse drug problems than you, or had

23    worse drug problems than you, who, not to put too fine a point

24    on it, you were feeding and will bring home to you just what

25    you have done while you are working through what you can do for

1    yourself to make life easier or more productive for you.

2           But in the connection with not only that

3    recommendation of the residential drug treatment program, there

4    is a component in the Probation Office.  You will be subject to

5    periodic drug testing.  I will permit the Probation Office to

6    do as many as 104 drug tests per year, as they think is

7    appropriate for your development.  They will, in addition,

8    develop a substance abuse program for you that is appropriate

9    under the circumstances.  To the degree that you can pay for it

10   yourself, or there is available third-party payment, you will

11   be expected to contribute to that, but it will be designed to

12   deal with your special set of circumstances, again, both to

13   strengthen you against the use of drugs and also to sensitize

14   you to the impact of drugs on others.

15          I am obligated, and of course I do, impose the

16   mandatory conditions.  I will call out a couple of them, but

17   they are requirements:  That you not commit another federal,

18   state or local crime; that you not possess a firearm or other

19   dangerous weapon; that you not possess unlawfully any

20   controlled substance.  You will be obligated to submit to the

21   collection of a DNA sample, as may be directed by the Probation

22   Office under these circumstances.

23          I am not going to impose a fine.  It seems to me that

24   there is a question of your ability to pay that, and, to the

25   degree that you can, it is money out of support for other

1    people that you care about who are being damaged, you recognize

2    it, by your being sent away.  There is, however, a special

3    assessment of $100.  That is due and payable immediately.  If

4    it is not paid immediately, it will be paid through a prison

5    financial responsibility program.

6            Now, are there any other conditions that the parties

7    or Probation would ask me to consider?

8            MS. CUMMINGS:  No, your Honor.  Thank you.

9            MR. GARRITY:  No, your Honor.

10           THE PROBATION OFFICER:  Your Honor, just the special

11   condition pertaining to possession of a firearm or destructive

12   device.

13           THE COURT:  I thought I said that, but I'll make it

14   again.

15           THE PROBATION OFFICER:  I may have missed it, then.

16           THE COURT:  I will make it again, because it is very

17   important, Mr. Allen.  You are now a felon, and if you get

18   caught with a firearm, you not only face a problem as a felon

19   in possession of a firearm under federal law, and that is a

20   severe sentence too, but you will face a further enhancement

21   here in violation of supervised release.

22           I am sorry.  Mr. Garrity?

23           MR. GARRITY:  Your Honor, it was not a condition, just

24   a request with respect to Mr. Allen being allowed to

25   self-report.

1          THE COURT:  I will, unless the Government objects to

2     it.  The problem, as you realize, is ordinarily I have to have

3     some more justification than simply that Mr. Allen would like

4     to self-report in the context of a case like this.

5          MR. GARRITY:  Judge, he did do the Safety Valve

6     proffer.  It's not cooperation, but he has been fully compliant

7     with that.  He has been fully compliant with the conditions as

8     I indicated previously, and I think the report says as much.

9     He also has a young daughter that has a birthday this weekend.

10    He would like to spend some time with her before he turns

11    himself in.

12         THE COURT:  Well, in the absence of a form of

13    objection from the Government, I will permit self-reporting.

14         MR. GARRITY:  Thank you.

15         THE COURT:  It makes me uncomfortable as a legal

16    proposition, because, in an excess of enthusiasm, the

17    Department of Justice, well pre-dating Ms. Cummings' arrival,

18    thought it was a really good idea to send people away

19    immediately.  The costs are significant, and it does not

20    provide for the adjustments that I think are necessary to

21    permit a longer flight path into the prison system and a softer

22    landing when you get there.  And so, I will permit

23    self-reporting to the institution to which Mr. Allen is

24    designated, and, if not there, then he will have to report to

25    the Marshals themselves.

1        But I will put it out so that we have an idea of what

2    the designation is going to be, and I think they are using

3    eight weeks now, six to eight weeks.

4        THE PROBATION OFFICER:  I'm not sure, your Honor.

5        THE COURT:  Well, I think I am going to use that, and

6    if there is a problem, somebody will tell me about it.  So, I

7    will say that the defendant must self-report by June 28 to the

8    facility that is designated --

9        MR. GARRITY:  Thank you, your Honor.

10        THE COURT:  -- there for him under these

11    circumstances.

12        One final point, Mr. Allen.  You should understand

13    that you have a right of appeal.  You will want to discuss with

14    your counsel whether that makes any sense under these

15    circumstances.

16        It is always a mixed feeling when I impose a sentence

17    on someone like you who has, as I have said, done good things

18    for his family and been supportive and tried to move things

19    along, but nevertheless has done something profoundly wrong to

20    the community.  And every effort is made by everybody involved

21    in this process to try to find that place that balances all of

22    those interests, treats you like an individual, but recognizes

23    your responsibility to society.

24        That having been done, the best thing that you can do

25    is have a thoroughgoing life of support for your community.  My

1  hope and expectation is that you will do that when you get out

2  of prison.  If you do, then all of us will be better off as a

3  result.

4           If there is nothing further, then we will be in

5  recess.  Thank you.

6           THE CLERK:  All rise.

7      (The Honorable Court exited the courtroom at 2:45 p.m.)

8           (WHEREUPON, the proceedings adjourned at 2:45 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


         I, Brenda K. Hancock, RMR, CRR and Official Reporter

of the United States District Court, do hereby certify that the

foregoing transcript constitutes, to the best of my skill and

ability, a true and accurate transcription of my stenotype

notes taken in the matter of *Unites States v. Archie Allen*,

No. 1:11-cr-10206-DPW.


Date:January 16, 2015          /s/ *Brenda K. Hancock*
                               Brenda K. Hancock, RMR, CRR
                               Official Court Reporter